Lisa K. CHESHIER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9704–CR–205.

Court of Appeals of Indiana.

Feb. 3, 1998.

Arnold P. Baratz, Baratz & Conway, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Preston Black, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

FRIEDLANDER, Judge.

Following a jury trial, Lisa K. Cheshier was convicted of Aggravated Battery,[1] a class B felony. The trial court sentenced Cheshier to fifteen years' imprisonment. She presents the following restated issues on appeal:

1. Did the trial court commit fundamental error in instructing the jury on Cheshier's defense of voluntary intoxication?

2. Did the trial court impose a manifestly unreasonable sentence?

We affirm.

The facts most favorable to the judgment are as follows. Cheshier's conviction arose out of events that occurred on June 22, 1996, after Cheshier and Lorraine Young were involved in a verbal altercation over Cheshier's husband, Ernest, who is also the father of Young's three adult children. That evening, Cheshier approached Young while the two were at a bar, poked her, and said "Ernie is married to me, Ernie loves me, Ernie coming [sic] back to me." *Record* at 207. Both women were asked to leave, and Cheshier left the bar first. Young left the bar a short time later, walked past a parking lot, and was standing by an alley when she saw a Cadillac drive past. The driver of the Cadillac, who turned out to be Cheshier, then turned around, parked, and shut the lights off. After a few minutes, Young started to walk toward the sidewalk, and the car started to move towards Young, who unsuccessfully tried to jump out of the way. The car hit Young and knocked her to the ground. Young was pinned under the car when it ran over her legs. Cheshier then shut the car off, got out, went over to where Young was pinned under the car, and said, "[B]itch, I'm going to kill you." *Record* at 210. Cheshier then used her fists to beat Young in the head. A passenger in the Cadillac grabbed

---

1. Ind.Code Ann. § 35–42–2–1.5 (West Supp. 1997).

**1228** ■

Cheshier and restrained her. Some passers-by then lifted the car off Young and detained Cheshier until police arrived.

Young was taken to the hospital, where she was rushed into surgery. Young suffered a broken pelvis and leg, and, due to her injuries, was bedridden for more than one month.

1.

Cheshier did not object at trial to the court's instructions on voluntary intoxication and affirmatively stated that she had no objection to the following instruction:

> The issue of the defendant's intoxication has been raised in this case. The defense of intoxication is offered to negate the capacity to formulate intent, in that the defendant must lack substantial capacity to either appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. It is not sufficient that the defendant merely ingested alcohol or controlled substances. Mere intoxication is not sufficient unless there is some mental incapacity resulting therefrom as will render a person incapable of thinking deliberately and mediating [sic] rationally. *A defendant should not be relieved of responsibility if he could devise a plan, operate equipment, instruct behavior of others or carry out acts requiring physical skill.*

*Record* at 118 (emphasis supplied).

■ Cheshier now claims that the trial court erred in so instructing the jury. She specifically takes issue with the final sentence of the above instruction. Cheshier has waived review of this issue by affirmatively stating that she had no objection to the instruction on voluntary intoxication and by failing to object at trial. No error with regard to the giving of an instruction shall be available on appeal except where there is a specific objection thereto before the jury retires for deliberations. Ind.Crim.Rule 8(B); Ind.Trial Rule 51(C). Cheshier seeks to avoid waiver of this issue by claiming that

the instruction constituted fundamental error.

"Fundamental error" is an error so blatant as to render the trial unfair to the defendant and, thereby, deprive the defendant of fundamental due process. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind.1994). To justify reversal in a case where an erroneous jury instruction was given, the error must be of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case. *Hill v. State*, 615 N.E.2d 97, 99 (Ind.1993); *Holliday v. State*, 601 N.E.2d 385, 389 (Ind.Ct. App.1992), *trans. denied.*

*White v. State*, 675 N.E.2d 345, 347 (Ind.Ct. App.1996), *trans. denied.*

■ There was no fundamental error in so instructing the jury. Our supreme court has repeatedly used the exact language Cheshier challenges. *See Legue v. State*, 688 N.E.2d 408 (Ind.1997); *Miller v. State*, 541 N.E.2d 260 (Ind.1989); *Terry v. State*, 465 N.E.2d 1085 (Ind.1984).[2] In addition, the instructions given, when read as a whole, did not mislead the jury as to the law of the case. The court properly informed the jurors that it was their duty to determine the facts in this case, that they were the exclusive and sole judges of the facts, and that they may also determine the law, as enacted by the legislature and as interpreted by the courts, for themselves. The jurors were also instructed that the State had the burden of proving that Cheshier "knowingly" inflicted injury on Young, *Record* at 97, 114, that "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so", *Record* at 98, and that they should not convict Cheshier unless they determine that Cheshier was capable of having the requisite intent to commit the charged offense. We find no fundamental error in the court's instructions to the jury on voluntary intoxication.

---

**2.** Although ultimately concluding that the error was harmless, this court in *Curran v. State* (1996) Ind.Ct.App., 675 N.E.2d 341, determined that an instruction identical to the one given in this case invaded the province of the jury and violated Art. I, § 19 of the Indiana Constitution because it improperly required a certain degree of intoxication be proven before the jury could accept the voluntary intoxication defense. To the extent that *Curran* conflicts with supreme court precedent, we disapprove of it.

**2.**

Cheshier's fifteen-year sentence for aggravated battery, a class B felony, is not manifestly unreasonable.

■ A person convicted of a class B felony may be sentenced to a presumptive term of ten years' imprisonment, and such sentence may be enhanced by up to ten years for aggravating circumstances. Ind.Code Ann. § 35–50–2–5 (West 1986). The aggravating factors the trial court used in this case to enhance the presumptive term by five years included: (1) Cheshier's history of criminal offenses, in terms of the number of prior offenses, the pattern of violence, and the increasing severity of violent offenses; (2) the nature of the offense, including that Young could have been killed as a result of Cheshier's attack on her while using a deadly weapon and that Cheshier could not control her anger and punched Young in the face even after Young was pinned under the car; and (3) that Cheshier was in need of rehabilitation best provided by a penal facility because prior placements in a less restrictive environment were unsuccessful in curbing Cheshier's violent behavior.

Cheshier contends that her sentence should be reduced on the basis of her claim that the following statement indicates that the court improperly considered as an aggravating factor a factual element of the offense of aggravated battery:

> I find the nature of the crime in this case to constitute an aggravating circumstance. Miss Young could easily have been killed there that day instead of sitting here with a leg that's severely mangled and is going to cause her problems for the rest of her life. She could be dead because you attacked her with a deadly weapon. And I find that to be an aggravating circumstance as well. A car.

*Record* at 453.

■ A fact that comprises a material element of a crime may not constitute an aggravating circumstance supporting an enhanced sentence. *Manns v. State*, 637 N.E.2d 842 (Ind.Ct.App.1994). Nonetheless, even if the trial court considered impermissible factors to enhance a sentence, we should affirm if other aggravating circumstances are adequate to support the sentence imposed.

*Lee v. State*, 689 N.E.2d 435 (Ind.1997); *Penick v. State*, 659 N.E.2d 484 (Ind.1995).

■ The court need list only one aggravating factor in order to support an enhanced sentence, and an enhanced sentence can be imposed where the only aggravating circumstance is a prior criminal history. *Manns*, 637 N.E.2d 842. The trial court noted that Cheshier had been arrested seven times and had a history of increasingly violent behavior. This alone was enough to support the enhanced sentence.

Judgment affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

While I fully concur with the majority as to Part Two, I write separately in order to address concerns with respect to the majority's holding under Part One. In my view, the intoxication instruction is clearly erroneous but not fundamentally so. For this reason, I do not conclude that it is necessary to reverse and remand for a new trial.

The majority relies heavily upon *Legue v. State* (1997) Ind., 688 N.E.2d 408; *Miller v. State* (1989) Ind., 541 N.E.2d 260 and *Terry v. State* (1984) Ind., 465 N.E.2d 1085 stating that "[o]ur supreme court has repeatedly used the exact language Cheshier challenges." Op. at 1228. In doing so, the majority misapplies those cases.

In *Legue*, the principle was enunciated in partial justification for failure to give any intoxication instruction at all. In *Miller*, the court made the statement, but solely in the context of the sufficiency of the evidence as to mens rea. Once again, in *Terry*, although the court had failed to give an intoxication instruction, the court's statement was made in the context of the evidence which might suffice for demonstrating the lack of mental capacity. In none of the cases does the court involve the inclusion of the language in question in an instruction.

Furthermore, our courts have repeatedly held that the mere fact that certain language or pronouncements of legal propositions are used in opinions of the Supreme Court or the

Court of Appeals, "does not make it proper language for instructions to a jury". *Spence v. State* (1981) Ind., 429 N.E.2d 214, 216; *Meek v. State* (1994) Ind.App., 629 N.E.2d 932.

Certainly, the challenged language in the final sentence of the instruction here was inappropriate. It carries with it the unmistakable implication that unless the defendant establishes his inability to physically and intellectually function, he should be convicted. In *Moore v. State* (1996) Ind.App., 673 N.E.2d 776, 780, *trans. denied,* the court held that instructing the jury that "[t]he [d]efendant must show that he was incapable of performing acts which require a significant degree of physical or intellectual skills" was fundamental error. Although the language in the instruction before us is not quite so unequivocal and unconditional as in *Moore,* it nevertheless is subject to the erroneous inference that the State has been relieved of its burden to prove every essential element of the crime and that the burden is upon the defendant to disprove the requisite intent.

The latter conclusion does not, however, compel me to vote for reversal. Here, as in *Curran v. State* (1996) Ind.App., 675 N.E.2d 341, the evidence is such as to persuade me that the error was harmless. For this reason I concur in the affirmance of the conviction for aggravated battery.